**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY LOUISE LULA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:03cv1066 |
| | ) | **Electronic Filing** |
| **NETWORK APPLIANCE, INC.**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

May 17, 2006

**I.    INTRODUCTION**

Plaintiff, Mary Louise Lula ("Plaintiff" or "Lula") filed a complaint in this action

alleging violations of her rights under Title VII of the Civil Rights Act of 1964, as amended by

the Equal Employment Opportunity Act of 1972, and the Civil Rights Act of 1991 ("Title

VII"), 42 U.S.C. §2000e-1, *et seq.*, the Age Discrimination in Employment Act ("ADEA") of

1967, 29 U.S.C. § 621, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA.

STAT. § 951 *et seq.*   Lula contends that her employment with Defendant, Network Appliance,

Inc. ("Defendant" or "NetApp"), was wrongfully terminated based upon her gender and her

age.

Following the close of discovery, NetApp filed a motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support of its motion filed a

memorandum of law and a statement of undisputed material facts.  Plaintiff has filed a

response to NetApp's statement of undisputed material facts, but failed to file a brief in

opposition to the motion for summary judgment.[1]

---

[1]    The Local Rules of the United States District Court for the Western District of
Pennsylvania require that Lula file a memorandum of law in opposition to the motion for
summary judgment that addresses applicable law and explains why there are genuine issues of
material fact to be tried and/or why the moving party is not entitled to judgment as a matter of
law.  *See* LR 56.1(C)(2).

NetApp also filed a motion to strike Lula's response and affidavit.  Specifically, NetApp contends that Lula's response to the statement of undisputed material facts must be stricken for failure to comply with Local Rule 56.1, that any denial be accompanied by a citation to a specific portion of the record that supports the denial.  NetApp argues that Lula's affidavit should also be stricken because it directly contradicts her sworn testimony and purports to attest to facts about which Lula has no personal knowledge.

NetApp further contends that Lula's Response does not comply with the requirements of Local Rule 56.1(C)(1)(c) that she set forth "in separately numbered paragraphs any other material facts that are allegedly at issue and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment." *See* LR 56.1(C)(1)(c).  Lula, instead, adds statements to her admissions and/or denials of NetApp's statements of fact that, in some instances are unrelated to the specific issue in the statement.  In the alternative, NetApp argues that its statements of undisputed material facts should be admitted for Lula's failure to properly deny such statements.  Lula failed to respond to NetApp's motion to strike.

## II.    STATEMENT OF THE CASE

NetApp is a high-tech company headquartered in Sunnyvale, California, and is in the business of electronic data storage solutions and content delivery.  (Pretrial Stipulation § III, ¶ 2).  It employs sales representatives across the United States, Canada and throughout the world. (Pretrial Stipulation § III, ¶ 3).

Lula was born on July 17, 1948, and was a career salesperson based primarily in Pittsburgh, Pennsylvania. (Pretrial Stipulation § III, ¶ 1; Defendant's Statement of Undisputed Material Facts hereinafter "Defendant's SUMF" ¶ 4).  Lula, presently fifty-seven (57) years of age, was employed by NetApp as a sales representative from August of 1998 until August of 2001. (Pretrial Stipulation § III, ¶ 4).  Lula was NetApp's first sales representative in Pittsburgh, and the only other NetApp employee was John Hurka ("Hurka"), a systems

engineer primarily responsible for providing technical assistance both pre- and post-sale. (Lula Dep. pp. 83, 87). Because NetApp did not maintain offices in Pittsburgh, Lula worked out of her home while employed by NetApp. (Lula Dep. p. 84).

From the beginning of her employment with NetApp until May of 2001, Lula's sales territory was part of NetApp's New England District, which was also part of NetApp's Northeastern Area. (Lula Dep. pp. 89-91, 93). Initially, her territory included Pennsylvania, out to Philadelphia, and West Virginia. (Lula Dep. p. 84). Lula was later asked to add upstate New York to her territory. *Id.* In May of 2001, Lula was reassigned to NetApp's Ohio District, headquartered in Cleveland, and upstate New York was removed from her sales territory. (Lula Dep. pp. 93-95, 100-104). The Ohio District was part of NetApp's Central Area. *Id.* In the Ohio District, Lula was supervised by District Manager David Sheperd ("Sheperd"). (Lula Dep. 100-101, 104). Sheperd reported to George Bennett ("Bennett"), Vice President of the Central Area. (Bennett Depo. pp. 8, 18-19).

In or around July of 2001, NetApp made the decision to reduce its work force due to declining sales and poor prospects for additional business in the near term. (Bennett Dep. pp. 105-106). Bennett was told to develop a plan to reduce the work force in his area by ten (10%) percent. (Bennett Dep. pp. 18, 107). After a review of the Central Area, Bennett decided that the work force in Pittsburgh was expendable. (Bennett Dep. pp. 18-21). Essentially shutting down Pittsburgh, Bennett believed it made better business sense to affect two (2) people in one city, rather than weakening and disrupting two cities. (Bennett Dep. p. 26). Bennett reviewed his proposed reductions for the entire Central Area with Robert Salmon, NetApp's Vice President, North American Sales, and Salmon gave his approval to Bennett's plan. (Bennett Dep. pp. 107-108; Salmon Dep. pp. 7, 58-60). Bennett did not request input from any of his district managers in identifying positions for elimination. (Bennett Dep. pp. 107-108, 111-112). Sheperd, therefore, had no input into the decision to close Pittsburgh. *Id.*

On August 14, 2001, Dan Warmenhoven, NetApp's CEO, announced to NetApp's

3

employees worldwide that the company was re-sizing in order to reduce expenses. Defendant's SUMF, ¶ 45). That same day, NetApp's President, Tom Mendoza, announced via on-line broadcast news that the work force was going to be reduced because of decreased revenues. (Lula Dep. pp. 232-235). On August 15, 2001, Sheperd met with Lula and Hurka in Pittsburgh to notify them that their positions with NetApp had been eliminated in connection with the company-wide reduction in force and the closing of the operation in Pittsburgh. (Sheperd Dep. p. 41; Lula Dep. pp. 229-230). During her meeting with Sheperd, Lula was given a letter dated August 14, 2001, referenced "Separation of Employment Due to Reduction-in-Force Layoff." (Lula Dep. p. 251; Exhibit 20). In addition, Sheperd gave Lula a document titled "Questions & Answers" which, among other things, instructed terminated employees regarding consideration for future employment at NetApp, stating: "If you see a position for which you think you are qualified, you are free to submit your resume as an applicant." (Lula Dep. p. 251-252; Exhibit 21).

NetApp retained no Pittsburgh-based employees, and did not fill the positions formerly held by Lula and Hurka. (Lula Dep. p. 256; Bennett Dep. pp. 23-24). Initially, Sheperd planned to cover the Pittsburgh area with representatives out of both Columbus and Cleveland offices, but this did not work out logistically, and the territory was covered exclusively out of the Cleveland office. (Sheperd Dep. pp. 68-69).

NetApp admits that, at the time of the layoffs in the Central Area, it anticipated that it would have to replace Dick Factor, who had recently resigned from his Cleveland based sales position. (Bennett Dep. pp. 221-223). Though Lula indicated that she believed it foolish to allow a person like her, with three years experience with NetApp, to be let go and to then hire a new employee, she admits that she did not submit a resume, cover letter or any other writing to apply for any of the positions she contends were available. (Lula Dep. pp. 259-260, 265). According to Bennett, Lula was not qualified for Dick Factor's position in Cleveland because she did nor reside in the Cleveland area and had no knowledge about the customer base in the

Ohio district. (Bennett Dep. pp. 221-223).

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well.  *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c),  its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at

trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV.    **DISCUSSION**

    A.    <u>The Establishment of a Prima Facie Case of Discrimination</u>

Lula contends that her employment with NetApp was wrongfully terminated, and that she was denied the opportunity to interview for an open position, based upon her gender and her age[2].   Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).   A plaintiff may establish an age discrimination claim using direct or indirect evidence. A direct evidence case of age discrimination exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir.1994).

Where there is no direct evidence of age discrimination, a plaintiff may still prevail by presenting circumstantial evidence under the burden shifting analysis of *McDonnell Douglas*[3]. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under a *McDonnell Douglas* framework, Lula must first present a *prima facie* case by establishing, by a preponderance of the evidence, that: (1) she is over 40 years old; (2) she is qualified for the position in question;

---

[2]    There is no need to differentiate between Lula's Federal discrimination claims and PHRA claims because, for our purposes, the same analysis is used for each. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44 & n.4 (3d Cir. 1998); *Jones v. School District of Philadelphia*, 198 F.3d 303, 410-411 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

[3]    The burden shifting analysis of *McDonnell Douglas* is also used to analyze Lula's claims under Title VII and the PHRA. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir. 2000).

(3) she suffered from an adverse employment decision; and (4) her replacement was sufficiently younger to permit an inference of age discrimination. *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999); *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973-974 (3d Cir. 1998). The Third Circuit recognized that the fourth element was inadequate in a reduction in force context, as opposed to demotion or discharge cases, and held that the fourth element is satisfied by showing that the employer retained a "sufficiently younger" employee. *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d at 235. Moreover, because the ADEA is not a bumping statute, a plaintiff must show that the employer retained a similarly situated employee. *Anderson v. CONRAIL*, 297 F.3d 242, 250 (3d Cir. 2002).

Once a plaintiff establishes a *prima facie* case, the employer must come forward with a legitimate, non-discriminatory reason for the adverse employment decision.  *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d  at 319 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-256 (1981)). "If the employer is able to proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d  at 319.

There is no question that Lula meets the first three elements of the  *prima facie* case.  At the time of her termination, Lula was a fifty-three (53) year old female, who everyone agrees was qualified for her position as a NetApp sales representative.  NetApp argues however that Lula can not establish a *prima facie* case in reduction in force as Lula is unable to show that other similarly situated employees outside of her protected class/classes were retained.

In order to qualify as a similarly situated employee, the individuals with whom a plaintiff seeks to be compared must be similarly situated in all "material respects." *Dill v. Runyon*, 1997 U.S. Dist. LEXIS 4355 *13 (E. D. Pa. 1997) *citing  Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996). *See also, Anderson v. CONRAIL*, 297 F.3d at

7

250(similarly situated employees must be in the same department performing the same duties, unless interdepartmental assignment of employees was the norm); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994) (stating that "in order for two or more employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the employees who he alleges were treated more favorably"). This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner. *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004)(citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999)).

Lula, however, has made no attempt to demonstrate that a similarly situated individual in an unprotected class was retained. After a comprehensive review of Lula's response to NetApp's undisputed material facts, as well as her affidavit,[4] the Court is unable find any comparison by Plaintiff to other employees who she contends were retained in her stead. Giving Lula's response to NetApp's undisputed material facts an extremely liberal reading, Lou Fini, a sales representative out of NetApp's Cleveland office may possibly be construed as situated similarly to Lula. Mr. Fini, however, had a sales territory in Ohio and operated out of a city in which NetApp had a physical plant. Lula, on the other hand, worked out of her home in Pittsburgh, and was the only sales representative for NetApp in the "Pittsburgh office." Though Mr. Fini eventually covered the Pittsburgh sales area for NetApp, he did so while working out of NetApp's Cleveland office. At no time after Lula's termination did NetApp restore or fill the Pittsburgh-based positions formerly held by Plaintiff or Mr. Hurka.

Additionally, Bennett had determined that Lula's territory had limited sales growth prospects, particularly with regard to NetApp's preferred large accounts. A similar territory would also have to be one in which NetApp did not maintain a physical presence, and therefore

---

[4] To reiterate, Lula has failed to file a brief in opposition to NetApp's motion for summary judgment, therefore there are no countervailing arguments to NetApp's position.

could be closed without incurring fixed costs.  Lula is unable to show that NetApp retained a

male or a substantially younger sales representative in the Central Area who covered a sales

territory with such limited growth prospects and also had no physical presence.  Lula is unable

show that the elimination of her position with NetApp occurred under any circumstances that

would permit an inference of discrimination. Therefore, Lula has failed to establish a *prima*

*facie* case of age or gender discrimination in reduction in force.

Lula additionally contends that NetApp's failure to hire her to fill a sale's position in

the Cleveland office, open at the time of her termination, was discriminatory.  Shortly before

NetApp reduced its workforce, Dick Factor, a sales representative in Cleveland, Ohio resigned

his position with NetApp.  (Bennett Dep. pp. 221-223; Defendant's SUMF ¶ 64)[5].  Lula

contends that it was foolish for NetAPP to let her go and hire a new employee for the

Cleveland office. (Lula Dep. pp. 259-260).

Once again, Lula fails to create a presumption of age or gender discrimination by

establishing, by a preponderance of the evidence, the requirements of a *prima facie* case set

forth above[6].  According to Bennett, Lula was not qualified for Dick Factor's position in

Cleveland because she did nor reside in the Cleveland area and had no knowledge about the

customer base in the Ohio District. (Bennett Dep. pp. 221-223).  In hiring for sales positions,

NetApp looks for a local presence and focuses on candidates who live and have sales

experience in the territory they wish to place a rep. (Defendant's SUMF ¶¶ 68-69, 73)[7].  Lula

---

[5]   Though Lula denies statement No. 64, her explanation actually admits NetApp's
reasoning to replace Dick Factor after his resignation.

[6]   Under a *McDonnell Douglas* framework, Lula must first present a *prima facie* case
by establishing, by a preponderance of the evidence, that: (1) she is over 40 years old; (2) she is
qualified for the position in question; (3) she suffered from an adverse employment decision; and
(4) her replacement was sufficiently younger to permit an inference of age discrimination.
(Citations omitted.)

[7]   Statement Nos. 68, 69 and 73 are either admitted by Lula, or admitted by her failure
to properly deny or dispute the statements.

was neither living nor selling in Northern Ohio. (Defendant's SUMF ¶ 74)[8].  Lula's resume[9] identified no sales experience in Ohio during the previous ten (10) years, and she admits that she did not sell in Ohio during her employment with NetApp. (Defendant's SUMF ¶ 75)[10]. Lula, however, was certainly qualified to be a NetApp sales representative.  It is not her burden at the *prima facie* stage to show that NetApp's nondiscriminatory reasons for not hiring her for the open position, i.e. lack of selling experience in Northern Ohio and her Pittsburgh residence, were mere pretexts to a discriminatory animus.

Lula, however, can not establish that she suffered an adverse employment action based upon a failure to hire.  She was never denied the position because she failed to properly apply for Factor's open sale's position.

On August 15, 2001, Sheperd met with Lula to notify her that her position with NetApp had been eliminated in connection with the company-wide reduction in force and the closing of the operation in Pittsburgh.  (Sheperd Dep. p. 41; Lula Dep. pp. 229-230).  During her meeting with Sheperd, Lula was given a letter dated August 14, 2001, referenced "Separation of Employment Due to Reduction-in-Force Layoff." (Lula Dep. p. 251; Exhibit 20).  In addition, Sheperd gave Lula a document titled "Questions & Answers" which, among other things, instructed terminated employees regarding consideration for future employment at NetApp, stating: "If you see a position for which you think you are qualified, you are free to submit your resume as an applicant." (Lula Dep. p. 251-252; Exhibit 21). Lula admits that she did not submit a resume, cover letter or any other writing to apply for any of the positions she contends were available.  (Lula Dep. pp. 259-260, 265).

Under the *McDonnell Douglas* test, a plaintiff must normally show that she applied for

---

[8]    Though Lula denies statement No. 74, she fails to cite to a specific portion of the record that supports her denial.

[9]    The resume submitted to NetApp when she first applied for a position in 1998.

[10]    Statement No. 75 is by Lula's failure to properly deny or dispute the statement.

the position which she was denied in order to state a *prima facie* case of discrimination. *See EEOC v. Metal Service Co.*, 892 F.2d 341, 347 (3d Cir. 1990). Nevertheless, the failure to formally apply for a job opening is not fatal to a claim of discriminatory hiring, "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Id.* at 348 (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection."). In the absence of a formal application, a plaintiff must show that she "did everything reasonably possible" to make her interest in the position known to defendants, that she "would have applied but for" defendant's discriminatory practices, or that she had a "real and genuine interest" in the position "but reasonably believed that a formal application would be futile." *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1415 (3d Cir. 1990) (organization has no standing for disparate impact claim absent such showing).

Here, Lula contends that she asked Sheperd at the August 15th meeting to consider her for Factor's vacant position, but he refused to acknowledge her request. (Lula Dep pp. 230-231).   In both her response to NetApp's statement of undisputed material facts and her affidavit, Lula contends that she also applied for the open positions directly with two of NetApp's Vice Presidents, Chris Carlton and Elaine Hamilton. (Lula Response ¶¶ 50 , 67; Lula Affidavit ¶¶ 40, 41).

The Court finds that this is not nearly enough to overcome her failure to formally apply for the position.  There is not one scintilla of evidence that Lula "would have applied but for" NetApp's discriminatory practices, or that she had a "real and genuine interest" in the position "but reasonably believed that a formal application would be futile." *See Newark Branch, NAACP v. Town of Harrison, supra.*  Lula has not established that NetApp was engaged in any discriminatory practices, nor does she indicate anywhere in the record that her application would be futile.  Therefore, Lula has failed to establish a *prima facie* case of age or gender

discrimination in her failure to hire claim.

Notwithstanding the Court's finding that Lula has failed in the very essence of her claims, we will examine Lula's contentions that NetApp's legitimate, non-discriminatory reasons for both her termination and the failure to hire her for Factor''s position were pretexts for gender and age discrimination.

B.    *McDonnell Douglas* Burden Shifting Analysis

Had Lula been able to establish a *prima facie* case, the burden would shift to NetApp to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802-04.  NetApp's burden at this stage however is relatively light, and is satisfied if NetApp articulates any legitimate reason for Lula's termination or for its failure to hire Lula for the Cleveland position. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  Moreover, NetApp does not have to prove that the articulated reasons actually motivated  the adverse employment action.  *Id*.

The Court finds that NetApp has articulated a legitimate, non-discriminatory reason for Plaintiff's termination.  In or around July of 2001, NetApp made the decision to reduce its work force due to declining sales and poor prospects for additional business in the near term. (Bennett Dep. pp. 105-106).  Bennett was told to develop a plan to reduce the work force in his area by ten (10%) percent.  (Bennett Dep. pp. 18, 107).  After a review of the Central Area, Bennett decided that the work force in Pittsburgh was expendable. (Bennett Dep. pp. 18-21). In Bennett's assessment, the sales activity in Pittsburgh did not justify a continued sales staff presence, and the accounts and opportunities in Pittsburgh could be handled through other sales offices or by using resellers. (Defendant's SUMF ¶ 35).  Moreover, Bennett believed that shutting down Pittsburgh and affecting two (2) people in one city, made better business sense than weakening and disrupting two cities. (Bennett Dep. p. 26).

NetApp has also articulated a legitimate, non-discriminatory reason for its determination not to hire Lula to fill Dick Factor's vacated position in Cleveland.  NetApp has

stated that in its hiring for sales positions, it looks for local presence and focuses on candidates who live and have sales experience in the territory they wish to place a rep. (Defendant's SUMF ¶¶ 68-69, 73). Lula was neither living nor selling in Northern Ohio. (Defendant's SUMF ¶ 74). Moreover, Lula's resume identified no sales experience in Ohio during the previous ten (10) years. (Defendant's SUMF ¶ 75)

Because NetApp has articulated legitimate, non-discriminatory reasons for the adverse employment actions, Lula must prove by a preponderance of the evidence that the proffered reasons were pretexts and that unlawful discrimination was the real reason for the employment action. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d at 352 n. 4. When discussing step three:

> the plaintiff can survive summary judgment only if [she] submits evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 n. 2 (3d Cir. 1998). *See also Fuentes v. Perskie,* 32 F.3d at 764.

To discredit NetApp's proffered reasons, however, Lula cannot simply show that NetApp's decision was wrong or mistaken. The factual dispute at issue is whether NetApp was motivated by a discriminatory animus, not whether NetApp was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). Instead, Lula must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in NetApp's reasons that one could reasonably conclude such reasons are incredible and unworthy of credence, and ultimately infer that NetApp did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765; *see also Josey v. John R. Hollingsworth Corp*., 996 F.2d 632, 638 (3d Cir. 1993)(holding that the proper inquiry is whether the plaintiff has proffered sufficient evidence of "inconsistencies and implausibilities in the employer's proffered reasons").

Lula has not submitted a brief that addresses or rebuts NetApp's proffered reasons for her termination or NetApp's failure to place her in an open sales position.  Lula must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age or gender was a motivating or determinative factor in the employment decisions. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997). There is absolutely no evidence that gender was a motivating or determinative factor in NetApp's employment decisions, and the only plausible evidence of age discrimination the Court can glean from Lula's response are certain innocuous comments made by Sheperd regarding Lula as his "senior person" and referring to the other sales representatives as "young pups."

Lula alleges that in late May 2001, Sheperd, her direct supervisor from May 2001 until her termination in August of 2001, stated to her that she "was his senior person and that he expected a lot more out of [her]."  (Lula Dep. p. 190).  Further, during a telephone conference prior to the May 30-31, 2001, district sales meeting, Sheperd stated that he was expecting a lot more out of Lula's territory review because she was his senior person and that she was not to let the young pups show her up. (Lula Dep. p. 196). Lula contends these comments by Sheperd are evidence of a discriminatory animus. (Lula Dep. pp. 111-112, 117-118).  The Court, however, finds such argument unavailing.

That the remarks were made is undisputed, the question is whether these comments, without more, are enough for a jury to reasonably believe that NetApp's reasons for terminating, and/or failing to hire, Lula were pretextual.  The Third Circuit has held that stray remarks by non-decision makers or by decision makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision. *See Hopkins v. Price Waterhouse*, 490 U.S. 228, 277 (1989);  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d at 528.

The clear evidence in this instance is that Sheperd had no input in the decision to terminate Lula.  Further, the comments were made months prior to the employment decisions at

14

issue, and such remarks were not made in the context of an employment or personnel decision. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151-152 (2000); *Brewer v. Quaker State Motor Oil, Co.,* 72 F.3d 326, 333 (3d Cir. 1995).  The Court finds that the above referenced statements are benign, temporally remote and unrelated to the termination of her employment, and therefore, carry virtually no weight in proving a discriminatory age-based animus.  *See e.g. Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997)(statement by decision maker "[]f you are getting too old for this job, maybe you should go hire one or two young bankers" did not raise an inference of discrimination); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d at 359(general discriminatory comment by someone involved in the decision making process which was unrelated to the adverse action was insufficient to show pretext).

The evidence alleged by Lula does not convince the Court that a factfinder could reasonably believe NetApp's articulated reasons for the adverse employment actions were false, and were merely a pretext for unlawful discrimination.  Summary judgment on Lula's Title VII, ADEA and PHRA claims shall be granted.

    C.    NetApp's Motion to Strike Lula's Response and Affidavit

NetApp also filed a motion to strike Lula's response and affidavit.  Specifically, NetApp contends that Lula's response to the statement of undisputed material facts must be stricken for failure to comply with Local Rule 56.1, that any denial be accompanied by a citation to a specific portion of the record that supports the denial.  NetApp argues that Lula's affidavit should also be stricken because it directly contradicts her sworn testimony and purports to attest to facts about which Lula has no personal knowledge.  Though the Court agrees with the arguments set forth in NetApp's Motion to Strike and Reply to Lula's Response, it will not impose the severe sanction requested.

The Court has carefully read Lula's Response and agrees that she failed to properly deny or dispute many of NetApp's statements of undisputed material facts.  Moreover, Lula

failed to support many of her responsive statements with specific citations to the record.  In such instances, the statements by NetApp were deemed admitted by Plaintiff.  Further, Lula's affidavit fails to meet the requirements of Rule 56(c) of the Federal Rules of Civil Procedure, lacks citations to the record and is replete with self-serving conclusory statements, arguments and unsupported allegations. The Court, therefore, gave the affidavit little weight in determining whether a genuine issue of material fact exists.

**V.    CONCLUSION**

This Court finds that there are no material facts in dispute, and Lula is unable to show that either age or gender discrimination was a determinative factor in NetApp's employment decisions.  NetApp's motion for summary judgment shall be granted.   An appropriate order will follow.


<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge


cc:    Charles E. Boyle, Esquire
       Michael E. Hoover, Esquire
       Diefenderfer Hoover Boyle & Wood
       1420 Grant Building
       Pittsburgh, PA 15219

       Carole S. Katz, Esquire
       Richard J. Hughes, Esquire
       Morgan Lewis & Bockius LLP
       One Oxford Centre, 32nd Floor
       Pittsburgh, PA 15219

16